FILED
2021 Apr-19 PM 12:07
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **ANNA O'MARY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CASE NUMBER: __________** |
| | ) | |
| **LINCOLN NATIONAL LIFE INSURANCE COMPANY, ARONOV REALTY MANAGEMENT, INC., GROUP LONG TERM DISABILITY INSURANCE FOR EMPLOYEES OF ARONOV REALTY MANAGEMENT, INC., GROUP LIFE & DEPENDENT LIFE INSURANCE FOR EMPLOYEES OF ARONOV REALTY MANAGEMENT, INC.,** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT

Comes now the Plaintiff, Anna O'Mary and hereby files her Complaint against Lincoln National Life Insurance Company, Aronov Realty Management, Inc., Group Long Term Disability Insurance for Employees of Aronov Realty Management, Inc., and Group Life & Dependent Life Insurance for Employees of Aronov Realty Management, Inc.

## PARTIES

1. The Plaintiff, Anna O'Mary ("O'Mary"), is a participant under ERISA-governed disability and life policies, Group Long Term Disability Insurance for Employees of Aronov Realty Management, Inc., ("LTD Plan") and Group Life & Dependent Life Insurance for Employees of Aronov Realty Management, Inc. ("LIFE Plan") (collectively the "Plans") who has been improperly denied disability and extension of death benefits.

2. Defendant, Lincoln National Life Insurance Company ("Lincoln") is the Claims Administrator for the Plans issued to Plan Sponsor, Aronov Realty Management, Inc. ("Aronov"). Defendants have improperly denied owed benefits to O'Mary under the Plans. Upon information and belief, Lincoln is a foreign corporation doing business throughout the United States, in the State of Alabama and in this district.

3. Defendant, Aronov Realty Management, Inc., is a domestic corporation with its principal place of business at 3500 Eastern Boulevard, Montgomery, Alabama 36116. On information and belief, Defendant Aronov is the Sponsor and Administrator of the Plans.

4. Defendant, Group Long Term Disability Insurance for Employees of Aronov Realty Management, Inc., Contract No. 000010128027 and Plan No. 501, ("Plan") is an employee benefit plan as defined in 29 U.S.C. §1002 (3) that is, upon

information and belief, both sponsored and administered by Defendant, Aronov Realty Management, Inc. with Defendant Lincoln serving as the claims administrator for the LTD Plan.

5. Defendant, Group Life & Dependent Life Insurance for Employees of Aronov Realty Management, Inc., Contract Nos. 000400138714 & 000010138594 ("LIFE Plan") is an employee benefit plan as defined in 29 U.S.C. §1002 (3) that is, upon information and belief, both sponsored and administered by Defendant, Aronov Realty Management, Inc. with Defendant Lincoln serving as the claims administrator for the Life Plan.

## JURISDICTION AND VENUE

6. This action arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001, et seq. Plaintiff asserts claims for long-term disability benefits, extension of death benefits, enforcement of ERISA rights, and statutory violations of ERISA under 29 U.S.C. §1132. This Court has subject matter jurisdiction under ERISA without respect to the amount in controversy or the citizenship of the parties. 29 U.S.C. §1132(a),(e)(1) and (f) and 28 U.S.C. §1131. Venue is proper in this district pursuant to 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391(b).

## INTRODUCTION

7. The traditionally held purpose of the ERISA statute is "to promote the

interest of employees and their beneficiaries in employee benefit plans." *Shaw v. Delta Airlines, Inc.*, 463 U.S. 85, 90 (1983). Instead of promoting and protecting the interests of Ms. O'Mary, Defendants victimized her by engaging in utterly reprehensible claim handling procedures. The shortcomings of ERISA as it relates to claims for "welfare" benefits have been exploited by the Defendants to avoid paying Ms. O'Mary's valid claims that would otherwise be payable under state insurance law. As described in more detail below, the Defendants have clearly engaged in bad faith claim handling and Ms. O'Mary, at a minimum, is patently entitled all relief that ERISA provides.

## STATEMENT OF FACTS

8. Ms. O'Mary is a participant under Group Long Term Disability Insurance for Employees of Aronov Realty Management, Inc., and Group Life & Dependent Life Insurance for Employees of Aronov Realty Management, Inc., plans sponsored by her employer, Aronov Realty Management, Inc. The plans provide participants, like Ms. O'Mary, long term disability ("LTD") benefits and extension of death ("EOD") benefits.

9. Ms. O'Mary is forty-seven years old. She worked at Aronov Realty Management, Inc. as an executive assistant until she became disabled from all work as of December 27, 2016.

10. Ms. O'Mary's medical conditions include lumbosacral spondylosis, spondylolisthesis status post-lumbar decompression and fusion with chronic lumbar and bilateral leg pain, and severe lumbar stenosis. Ms. O'Mary has limited range of motion and suffers impairing side effects from her prescribed medications including fatigue, drowsiness, and dizziness. Her restrictions and limitations from her medical conditions render Ms. O'Mary unable to perform all work as indicated by her treating physicians and the Social Security Administration.

11. Defendants never approved Ms. O'Mary's Extension of Death benefit, issuing an initial denial dated August 8, 2017. (*See* August 8, 2017, EOD Denial Letter from Lincoln, attached hereto as Exhibit "A").

12. Defendants approved and paid Ms. O'Mary for long-term disability benefits from March 27, 2017 until April 27, 2018, terminating and reinstating her benefits at will during that time-period, before permanently terminating her long-term benefits by letter dated May 15, 2018. (*See* May 15, 2018 LTD Termination Letter from Lincoln, attached hereto as Exhibit "B").

13. Ms. O'Mary appealed the denial of her EOD benefits by letter dated February 1, 2018 and submitted supportive evidence of her disability. (*See* EOD Appeal dated February 1, 2018, attached hereto as Exhibit "C", (without attachments)).

14. Defendants upheld the erroneous denial of EOD benefits by letter dated April 4, 2018. (*See* EOD Appeal Denial Letter dated April 4, 2018, attached hereto as Exhibit "D").

15. Ms. O'Mary again appealed the denial of her EOB benefits and appealed the termination of her LTD benefits by letter dated October 1, 2018. (*See* 2nd EOD & LTD Appeal Letter dated October 1, 2018, attached hereto as Exhibit "E", (without attachments)).

16. Despite receiving extensive evidence showing Ms. O'Mary's continuing chronic pain, fatigue, limited range of motion, and other debilitating side effects from her necessary medications, Defendants issued a final denial for her EOD benefits by letter dated April 25, 2019 and a denial of her LTD benefits on the same date. (*See* EOD and LTD Denial Letters dated April 25, 2019, attached hereto as Exhibit "F").

17. Plaintiff submitted a second appeal of the termination of her LTD benefits by letter dated October 22, 2019 and notified Defendants of O'Mary's favorable Social Security Disability decision and continued support of her claim by her treating physician. (*See* LTD 2nd Appeal Letter dated October 22, 2019, attached hereto as Exhibit "G", (without attachments)).

18. Regardless, Defendants issued a final denial for her LTD benefits by letter dated February 21, 2020. (*See* LTD Final Denial Letter dated February 21, 2020, attached hereto as Exhibit "H").

19. In all denials Defendants relied on the opinions of their paid medical reviewers who never examined Ms. O'Mary. (*See* Exhibits "A", "D", "F", & "H").

20. Ms. O'Mary's treating neurosurgeon, Dr. Mamerhi Okor, has repeatedly opined by both medical source statement and by completing attending physician statements, that Ms. O'Mary has severely debilitating restrictions and limitations. Dr. Roger Kemp, her pain management physician, repeatedly opined that Ms. O'Mary's restrictions and limitations caused by her back pain and other conditions were permanently disabling. In fact, in Attending Physician Statements, when asked to select her level of physical impairment (*As defined in the Federal Dictionary of Occupational Titles), both doctors indicated her physical impairment level to be "Class 4 – Severe limitation of functional capacity; incapable of minimum (*sedentary) activity (74-100%). (*See* Attending Physician Statements by Drs. Okor and Kemp and Correspondence from Dr. Okor attached hereto as Exhibit "I").

21. Defendants' relentless pursued disability benefits awarded and claimed an overpayment of the LTD benefits they did pay to Ms. O'Mary, but did not give the approval any further consideration. (*See* Correspondence regarding Social Security Award, attached hereto as Exhibit "J")

22. As of this date Ms. O'Mary has been denied benefits rightfully owed to her under the plans. Defendants' decision to deny EOB and LTD benefits under the plans were grossly wrong, without basis and contrary to the evidence.

23. Ms. O'Mary met and continues to meet the plans' definitions of "disabled."

24. The Defendants did not establish and maintain a reasonable claim procedure or provide a full and fair review of Ms. O'Mary's claim as required by ERISA. Instead, Defendants acted only in their own pecuniary interests and violated ERISA by conduct including, but not limited to, the following: reviewing the claim in a manner calculated to reach the desired result of denying benefits; failing to properly consider and credit the medical opinions of Ms. O'Mary's medical providers; and failing to have Ms. O'Mary submit to independent medical exams as allowed by the Plans.

25. Upon information and belief, the Plans do not grant discretionary authority to determine eligibility for benefits to any other entity who may have adjudicated Ms. O'Mary's claim. Therefore, the Court should review the Plaintiff's claim for benefits under a *de novo* standard. *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). In the alternative, the denial of Plaintiff's benefits constitutes an abuse of discretion.

26. Upon information and belief, Lincoln was required to both evaluate and pay claims under the Plan at issue, creating an inherent conflict of interest.

27. Ms. O'Mary has exhausted any applicable administrative review procedures, and Defendants' refusal to pay benefits is both erroneous and unreasonable and has caused tremendous financial hardship on Plaintiff.

## DEFENDANTS' WRONGFUL AND UNREASONABLE CONDUCT

### A. Defendants' Determination that Plaintiff does not Meet the Definition of Disability as Stated in the Plans was both Erroneous and Unreasonable.

28. According to Lincoln, the Long-Term Disability plan at issue states, in part:

> TOTAL DISABILITY or TOTALLY DISABLED will be defined as follows:
> 1. During the Elimination Period and Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the Main Duties of his or her Own Occupation.
>
> 2. After the Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the Main Duties of any occupation which his or her training, education or experience will reasonably allow.
>
> The loss of a professional license, an occupational license or certification, or a driver's license for any reason does not, by itself, constitute Total Disability.

(*See* Exhibit "F").

29. According to Lincoln, the Life Plan at issue defines Total Disability as follows:

> DEFINITION. For this benefit, Total Disability or Totally Disabled means an Insured Person:
> (1) is unable, due to sickness or injury, to engage in any employment or occupation for which such Insured Person is or becomes qualified by reason of education, training, or experience; and
> (2) is not engaging in any gainful employment or occupation.

(*See* Exhibit "F").

30. Ms. O'Mary's treating physicians and the Social Security Administration all determined that Ms. O'Mary's restrictions and limitations were so severe that she would be unable to perform any work at any exertional level. (*See* Exhibits "I" & "J"). However, Defendants ignored those supported opinions and based their denial on flawed and unreliable medical and vocational evidence and analyses that were obtained from biased and conflicted sources. Defendants also disregarded reliable evidence establishing Ms. O'Mary's ongoing disability.

31. Ms. O'Mary struggles with debilitating pain and symptoms from her conditions every single day. Defendants' assertion that she is not disabled is at the very least unreasonable.

**B. Defendants' Decision to Terminate Long Term Disability and Deny Waiver of Premium Benefits was not Supported by Substantial Evidence.**

32. In their consideration of Ms. O'Mary's claim, Defendants only retained paid consultants to review her medical records. The sole reason for Defendants'

denials and termination was based on the opinions of paid paper reviewers, who never actually examined Ms. O'Mary, and determined that she did not suffer disabling restrictions and limitations.

33. Considering the nature of her conditions and her well-documented struggles with treatment, the notion that she is not restricted from work is absurd. Based on the language of the policy and common-sense practice, Defendants could have requested an independent medical examination of Ms. O'Mary. Instead, they determined that an in-house vocational analysis and a medical file review were superior to years of treatment records and recommendations from Ms. O'Mary's actual treating physicians.

34. Ms. O'Mary's medical file clearly demonstrates that she is disabled. Ms. O'Mary's treating physicians have attested to her disabilities on multiple occasions. Defendants were provided with numerous capacity reports that consistently stated Ms. O'Mary would be totally disabled indefinitely. Defendants also had access to records from Ms. O'Mary's treating physicians clearly documenting Ms. O'Mary's constant struggle with debilitating pain and the symptoms from her many serious medical conditions.

35. The records of Ms. O'Mary's long-standing medical providers, who have no stake in the outcome of the case, clearly evidence that she is disabled based

on their numerous personal examinations, testing, and procedures. Their opinions are consistent with the record as a whole.

36. Defendants' hired medical reviewers, on the other hand, did not examine Ms. O'Mary. The conclusion that Ms. O'Mary was not disabled was based merely on hired reviewers' assessment of her medical records. The opinions of Defendants' medical reviewers do not support the revocation of benefits because the opinions of these non-examining consultants hired by the insurance company are the only "evidence" contrary to the opinions of Ms. O'Mary's treating physicians.

37. Not only did Defendants' hired medical consultants never examine Ms. O'Mary but there is no evidence to support their position that she was less restricted than indicated by her treating physicians.

38. Ms. O'Mary's own medical physicians' evaluations were objective and reliable and should have been afforded far greater weight than those of consultants hired by Defendant, especially since Defendant's reviewers never bothered with even one of the multiple physical exams allowed by the Plans. Accordingly, Defendant's termination of Ms. O'Mary's LTD benefits and EOD denials were based on insufficient evidence.

**C. Defendants' Failure to Properly Credit Ms. O'Mary's Well-Documented Complaints Pain was Arbitrary and Capricious.**

39. Ms. O'Mary's primary disabling impairments have been established by objective proof and have been diagnosed by her treating physicians based on her medical history, physical examinations, imaging and observation.

40. While pain can be a subjective component of Ms. O'Mary's conditions it is reasonable and expected that her conditions would cause the level of pain claimed by Ms. O'Mary.

41. In the denial letters, Defendants made no mention of how Ms. O'Mary's severe pain and fatigue from her necessary medical treatments would affect her ability to perform work.

42. The record in this case reveals well-documented complaints of debilitating pain. There is no objective evidence to contradict Ms. O'Mary's complaints and therefore Defendants cannot discredit her subjective complaints.

43. It was substantively unreasonable for the Defendants to deny benefits for Ms. O'Mary's disabilities involving subjective elements such as pain and fatigue.

44. Ms. O'Mary has submitted credible evidence of the subjective components of her conditions and objective evidence of the underlying conditions causing her pain.

45. Defendants made no effort to evaluate the veracity of Ms. O'Mary's claim and did not identify what objective evidence she could have or should have produced to be sufficient to prove subject elements of her claim.

46. Ms. O'Mary's medical records contain well-documented complaints of pain and treatments prescribed by her treating physicians. The records provided to Defendants show Ms. O'Mary's long-time struggles with pain, fatigue, limited mobility, as well as a host of other side effects from her necessary medications.

47. Defendants did not credit these well-documented complaints or the opinions of Ms. O'Mary's treating physicians, and instead unreasonably denied her claim.

48. In its review, Defendants also failed to consider non-exertional limitations including (1) impaired concentration due to pain and medication side effects; (2) limited dexterity and range of motion; and (3) a limited ability to remain seated for an extended period of time. Such non-exertional limitations are important aspects of vocational capacity that Defendants did not properly evaluate.

## CAUSES OF ACTION

### Count One
### ERISA (Claim for Benefits Owed under Plan)

49. Plaintiff hereby incorporates by reference every fact as if it were restated herein.

50. At all times relevant to this action Ms. O'Mary was a participant of Group Long Term Disability Insurance for Employees of Aronov Realty Management, Inc., and Group Life & Dependent Life Insurance for Employees of Aronov Realty

Management, Inc. within the meaning of 29 U.S.C § 1002(7) and was eligible to receive disability benefits and extended death benefits under the Plans.

51. As more fully described above, the denial, termination, and refusal to pay Ms. O'Mary benefits under the Plans for the period of at least on or about December 2016 through the present constitutes a breach of Defendants' obligations under the plans and ERISA. The decision to deny benefits to Ms. O'Mary was not reasonable and it was not based on substantial evidence.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays the Court to enter judgment for Plaintiff and otherwise enter an Order providing that:

1. The applicable standard of review in this case is *de novo*;

2. That the Court may take and review the records of Defendants and any other evidence that it deems necessary to conduct an adequate *de novo* review;

3. From at least December 2016 through the present, Ms. O'Mary met the Plans' definitions of disabled;

4. Defendants shall pay Ms. O'Mary all benefits due for the period from at least December 2016 through the present in accordance with the policy;

5. Defendant shall pay Plaintiff compounding prejudgment interest on all contractual benefits that have accrued prior to the date of judgment in accordance with 29 U.S.C. § 1132(a)(1)(B) or 29 U.S.C. § 1132(a)(3);

6. Defendant shall continue paying Plaintiff's benefits in an amount equal to the contractual amount of benefits to which she is entitled through the Plans' Maximum Benefit Periods so long as she continues to meet the Plans' conditions for continuance of benefits;

7. Defendant shall pay attorney's fees for Plaintiff's counsel pursuant to 29 U.S.C. § 1132(g);

8. Plaintiff be awarded any and all other contractual and/or equitable relief to which she may be entitled, as well as the costs of suit.

Respectfully Submitted,

/s/ *Amanda Stansberry*
Amanda Stansberry (ASB-7793-M64S)

STANSBERRY LAW, LLC
3535 Grandview Parkway
Suite 310
Birmingham, Alabama 35243
Phone: 205-383-7996
Fax: 833-583-4357
amanda@stansberrylaw.com

**PLEASE SERVE DEFENDANT BY CERTIFIED MAIL AT:**

Lincoln National Life Insurance Company
c/o The Prentice-Hall Corporation System, Inc.
641 South Lawrence Street
Montgomery, AL 36104

Aronov Realty Management, Inc.
c/o Jake F. Aronov
3500 Eastern Blvd.
Montgomery, AL 36116-1781

Group Long Term Disability Insurance for Employees of Aronov Realty Management Inc.
c/o Aronov Realty Management, Inc.
3500 Eastern Blvd.
Montgomery, AL 36116-1781

Group Life & Dependent Life Insurance for Employees of Aronov Realty Management Inc.
c/o Aronov Realty Management, Inc.
3500 Eastern Blvd.
Montgomery, AL 36116-1781