FILED
2021 Apr-19 PM 12:07
U.S. DISTRICT COURT
N.D. OF ALABAMA

# EXHIBIT

# "F"

Lincoln Financial Group

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

**The Lincoln National Life Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
Toll free (800) 423-2765
www.Lincoln4benefits.com

April 25, 2019

STANSBERRY LAW LLC
ATTN AMANDA STANSBERRY
420 N 20th ST STE 2200
BIRMINGHAM, AL 35203

Re: Policyholder: ARONOV REALTY MANAGEMENT INC
Policy Number: 00001012802700000
Claim Number: 1170026162
Claimant: Anna O'Mary

Dear Ms. Stansberry:

We have completed our review of your client's Long Term Disability appeal. Based on the information provided, we have determined that we are unable to approve benefits beyond 04/27/2018. In our appeal review process, all information previously submitted as well as any new documentation was used to make a determination.

To be eligible for benefits under the policy issued to ARONOV REALTY MANAGEMENT INC, an individual must satisfy all of the provisions of the policy. This includes, but is not limited to, the following:

> **TOTAL DISABILITY or TOTALLY DISABLED** will be defined as follows:
>
> 1. During the Elimination Period and Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the Main Duties of his or her Own Occupation.
> 2. After the Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the Main Duties of any occupation which his or her training, education or experience will reasonably allow.
>
> The loss of a professional license, an occupational license or certification, or a driver's license for any reason does not, by itself, constitute Total Disability.
>
> **OWN OCCUPATION or REGULAR OCCUPATION** means the occupation, trade or profession:

©2019 Lincoln National Corporation www.lincoln4benefits.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

1. in which the Insured Employee was employed with the Employer prior to Disability; and
2. which was his or her main source of earned income prior to Disability.

It means a collective description of related jobs, as defined by the U.S. Department of Labor Dictionary of Occupational Titles. It includes any work in the same occupation for pay or profit, regardless of:

1. whether such work is with the Employer, with some other firm, or on a self-employed basis; or
2. whether a suitable opening is currently available with the Employer or in the local labor market.

**MAIN DUTIES or MATERIAL AND SUBSTANTIAL DUTIES** means those job tasks that:

1. are normally required to perform the Insured Employee's Own Occupation; and
2. could not reasonably be modified or omitted.

To determine whether a job task could reasonably be modified or omitted, the Company will apply the Americans with Disabilities Act's standards concerning reasonable accommodation. It will apply the Act's standards, whether or not:

1. the Employer is subject to the Act; or
2. the Insured Employee has requested such a job accommodation.

An Employer's failure to modify or omit other job tasks does not render the Insured Employee unable to perform the Main Duties of the job.

Based on information obtained from your client's employer, occupational information contained within the *Dictionary of Occupational Titles* (DOT) and an evaluation from vocational professionals, we have determined that your client's occupation as an Executive Assistant is best defined as an Administrative Secretary in the national workforce. The material and substantial duties of an Administrative Secretary include but are not limited to the following:

- Keeps official corporation records and executes administrative policies determined by or in conjunction with other officials:
- Prepares memorandums outlining and explaining administrative procedures and policies to supervisory workers.
- Plans conferences.
- Directs preparation of records, such as notices, minutes, and resolutions for stockholders' and directors' meetings.
- Directs recording of company stock issues and transfers.
- Acts as custodian of corporate documents and records.
- Directs preparation and filing of corporate legal documents with government agencies to conform with statutes.
- In small organizations, such as trade, civic, or welfare associations, often performs publicity work.
  Depending on organization, works in line or staff capacity.

Regarding physical capacity, an Administrative Secretary in the national workforce is a Sedentary physical capacity occupation. The definition of Sedentary work is Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are only required occasionally (1-33%) and if all other sedentary criteria are met. Sedentary work may require exertion up to 10 lbs. occasionally and a negligible degree of exertion on a frequent (34-66%) or constant (67-100%) basis.

In order to be considered Totally Disabled, the medical evidence must support that your client would be unable to perform each of the main duties of your client's regular occupation. As such, in considering your client's eligibility for Long Term Disability benefits beyond 04/27/2018, we evaluated whether your client would be restricted or limited from performing the main duties of her occupation as listed above.

Your client's entire file was reviewed upon appeal. Disability must be supported from 04/27/2018 forward, which was the focus of our determination.

**Summary of Initial Claim Filing**

Your client's initial claim forms state that she was unable to continue working in her own occupation beyond 12/23/2016 due to lumbosacral spondylosis, spondylolisthesis and post-lumbar fusion.

Benefits were approved from 03/27/2017 to 04/27/2018. Benefits were not approved beyond 04/27/2018 after we determined your client is no longer Totally Disabled from performing the main duties of her occupation. Our evaluation included a review of the medical documentation, including consultation with and/or review of a written report from a health care consultant. For complete details, please refer to our letter dated 05/15/2018.

**Summary of Appeal**

On 10/01/2018, you and your client filed an appeal in response to our determination to terminate/deny benefits. Additional information was submitted from various sources including but not limited to Dr. Kemp, Jo Shuford-Guice CRNP, Dr. Javed, Dr. Staner and Dr. Okor as well as the results of multiple diagnostic tests and a copy of your client's Social Security file.

The medical records document lumbar spondylosis with radicular pain. Your client underwent lumbar spinal surgery on 12/27/2016. She was considered through a recovery period to 06/27/2017 based on a prior peer review. Supportive evidence found in the medical records include: normal examination findings, good progress after surgery, and pain control per Pain Management. There is no documentation of adverse side effects of pain medication that would preclude your client from participating in her own financial or medical decision making, driving, personal activities or work activities. As of 02/16/2018, Peer Reviewer Behza Emad, MD, upon peer to peer discussion, proposes restrictions and limitations (R&L's), which are agreed upon by your client's treating provider, from 06/27/2017 forward for 5 months beyond the date of the review. On 02/18/2018, Alan Babb, MD, conducted an IME for Social Security Disability and concluded: "At this time I cannot document any specific disabling conditions." While the IME physician opined he found no impairment and no restrictions are supported, it is unclear what medical information was provided for his review. Therefore, the R&L's provided

by Dr. Emad during the 02/16/2018 peer review are reasonable, based on the information that was included in this review. R&L's supported include:

From 12/23/2016 through 06/27/2017, due to scheduled and subsequent lumbar spine surgery and the recommended recovery period, it would have been medically reasonable that your client was functionally impaired and unable to perform in any duty at this time.

From 06/28/2017 forward, due to your client's ongoing symptoms and clinical findings, the following restrictions/limitations are supported:

- The claimant is restricted to sitting up to 30 minutes at a time and up to a total of six hours in an eight-hour day.
- The claimant is restricted to standing and walking combined up to one hour at a time and up to a total of two hours in an eight-hour day.
- The claimant is restricted to carrying, lifting, pushing and pulling no greater than 10 pounds of weight occasionally, and 5 pounds frequently.
- There are no restrictions in reaching overhead, above the shoulders, and at waist/desk level.
- The claimant is restricted to occasional reaching below the waist level.
- There are no restrictions for handling, fingering, grasping, pinching, gripping and use of hand controls.
- The claimant is restricted to occasional twisting, crawling, crouching, bending/stooping, kneeling, squatting, stair climbing, and use of foot control.
- The claimant is restricted from working at unprotected heights, driving commercial vehicle, climbing ladders, and operating heavy equipment or safety sensitive machinery.

The duration of the outlined restrictions/limitations is five months from the date of this report. After which, re-evaluation of the claimant's condition is advised to determine the continued necessity of the supported restrictions/limitations. The claimant is able to perform full-time (8 hours/day, 5 days/week) within the indicated restrictions/limitations.

On 01/07/2019, we sent a copy of the medical review to you to give you the opportunity to provide the assessment to your client's treating physician(s) for further review and comment. We also included a copy of the prior peer review report. In response, you submitted additional medical records from Dr. Kemp, various diagnostic test results and a letter from your client's medical carrier regarding two of her medication. This information was forwarded to the health care consultant for review.

It was the opinion of the reviewer that the medical records provided for addendum review do not change the prior determination from the date of prior peer review in February 2018 forward. The medical records, the treating provider's prior peer conversation and the physical examination findings continue to support the R&L's noted previously by Dr. Emad in his February 2018 peer review.

Prior to the appeal determination, additional records were submitted from Dr. Okor along with lumbar spine x-ray results both dated 02/25/2019. This information was also reviewed by the health care consultant.

An x-ray of the lumbar spine dated 02/25/2019 finds a fracture of the right posterior stabilization rod; no other hardware complication is found. Also Grade 2 anterolisthesis of L5-S1; superior endplate compression fracture of L1 is similar; disc spaces are stable.

An office visit with Dr. Okor (Neurosurgery) on 02/25/2019, at which time Dr. Okor advised your client of fractured hardware. She continued to complain of pain. Exam was normal for motor, sensory, reflexes and coordination. She was ambulating with a cane. Surgery was offered; however, it is unknown if it would benefit her significantly. Your client declined.

In summary, the medical records from Dr. Kemp (Pain Management) spanning 02/07/2018 - 02/20/2019 revealed your client continued with pain treated with oral medications and spinal injections, ambulating with a cane, but otherwise normal exams.

Medical records from Dr. Staner (Neurosurgery) from 11/01/2018 - 02/08/2019 revealed normal exam findings but significant ongoing pain and an option for a spinal cord stimulator was discussed. She was referred back to Dr. Okor.

The medical records submitted document a new finding of fractured hardware in February 2019, not otherwise contributing to your client's complaints, and risk versus benefit of replacement is not significant. Your client chose conservative care. Examination findings continued to be normal except for antalgic gait with a cane. The additional medical records did not provide compelling new evidence that would change the Peer Review determination at that time. The medical records continue to support the prior determination from 04/27/2018 for LTD.

**Appeal Decision**

We understand that your client has been diagnosed with lumbosacral spondylosis, spondylolisthesis and post-lumbar fusion. However, our review of the medical documentation, which included consultation with and/or review of a written report from a health care consultant, does not support that your client was unable to perform the main duties of her own occupation beyond 04/27/2018.

The available clinical documentation does not contain evidence of physical or functional impairment that would prevent your client from working as an Administrative Secretary as defined by the Department of Labor as of 04/27/2018. A review of the medical records did not identify restrictions and limitations that would preclude sedentary occupational activity. Therefore, we are unable to consider additional benefits beyond that date.

We evaluated this claim by applying the provisions of the policy to the facts and opinions contained in the claim file. Other than what is set out in the policy, we did not rely upon any guidelines, internal rules, protocols, standards or other similar criteria in reaching this claim determination.

**Appeal Rights**

As a reminder, your client has exhausted their first level of appeal. If your client disagrees with this decision, you, your client, or a person legally authorized as your client's representative, may pursue a final administrative appeal.

To initiate this process please have your client or an authorized representative submit a written request for review to the following address within 180 days after you receive this denial notice.

Claims Shared Services
The Lincoln National Life Insurance Company
PO Box 2337
Omaha, NE 68103
Fax: 402-361-1460

The following should be included with the appeal letter:

1. The policy number and claim number;
2. The reason(s) for appealing; and
3. If applicable, any additional documentation to support the appeal, such as medical treatment records, laboratory results, x-rays or other testing results.

Following receipt of your client's appeal, we will review the claim and provide you or your client with a full written explanation of the decision within 45 days. You or your client may also request copies of records and other information relevant to the claim free of charge.

If your client's plan is subject to ERISA, he or she may have other voluntary alternative dispute resolution options, such as mediation. One way to find out what may be available is to contact your client's local U.S. Department of Labor Office or your client's state insurance regulatory agency. In addition, once all required reviews of your client's claim have been completed, your client has the right to bring a civil action under applicable law.

The employer's plan has a contractual limitations period of three years, which means that a lawsuit must be brought within three years after the date written proof of claim or proof of continued disability was required. The date on which the contractual limitations period expires for this claim is 04/27/2021.

Please contact me directly at the number listed below with any questions you may have or email us at LFGAppeals@lfg.com.

Sincerely,

Kelly Tedford
800-423-2765 *2593
Specialist, Claims
Appeals Department – Claims Solutions Shared Services
The Lincoln National Life Insurance Company

Chinese (Simplified)

注意：如果您说普通话，可以选择免费语言支持服务。 请拨打 1-800-423-2765.

Chinese (Traditional)

注意：若您講國語，可使用我們的免費語言支援服務。 請致電 1-800-423-2765.

Tagalog

Pansinin: Kung nagsasalita ka ng Tagalog, mayroon kang magagamit na mga libreng serbisyo ng tulong sa wika. Tumawag sa 1-800-423-2765.

Spanish

Atención: si habla español, tenemos disponibles servicios de apoyo con el idioma sin costo para usted. Llame al 1-800-423-2765.

Navajo

DÍÍ BAA AKÓ NÍNÍZIN: Díí bee yáníłti'go Diné bizaad, saad bee áká'ánida'áwo'dę́ę́' t'áá jiik'eh, ná hóló. Kojį' hódíílnih áǫįóóǫéąą́ǫąíę́ę.

Lincoln Financial Group

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

**The Lincoln National Life Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
Toll free (800) 423-2765
www.Lincoln4benefits.com

April 25, 2019

STANSBERRY LAW LLC
ATTN AMANDA STANSBERRY
420 N 20th ST STE 2200
BIRMINGHAM, AL 35203

Re: Policyholder: ARONOV REALTY MANAGEMENT INC
Policy Numbers: 00001013859400000 & 00040013871400000
Claim Numbers: 1170064726 & 1170064727
Claimant: Anna O'Mary

Dear Ms. Stansberry:

We have completed our review of your client's appeal for Extension of Death Benefit under the above referenced policy.

Based on the information provided, we have determined that we are unable to approve benefits. In our appeal review process, all information previously submitted as well as any new documentation was used to make a determination.

To be eligible for continued life insurance coverage without payment of premium under the policies issued to your client's employer, an individual must satisfy all of the provisions of the policies. The specific terms, conditions and limitations of the policy provisions for the Extension of Death Benefit section of the plans include, but are not limited to, the following:

**Basic Group Life**

**DEFINITION**. For this benefit, Total Disability or Totally Disabled means an Insured Person:

(1) is unable, due to sickness or injury, to engage in any employment or occupation for which such Insured Person is or becomes qualified by reason of education, training, or experience; and
(2) is not engaging in any gainful employment or occupation.

**Voluntary Group Life**

**DEFINITION**. For this benefit, Total Disability or Totally Disabled means you:

©2019 Lincoln National Corporation www.lincoln4benefits.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

(1) are unable, due to sickness or injury, to engage in any employment or occupation for which you are or become qualified by reason of education, training, or experience; and
(2) are not engaging in any gainful employment or occupation.

**Summary of Initial Claim Filing**

Mrs. O'Mary's initial claim forms state that she stopped working on 12/27/2016 due to lumbosacral spondylosis, spondylolisthesis and post-lumbar fusion.

Extension of Death Benefits were not approved after we determined that your client does not have a Total Disability as defined above. Our review of the medical documentation, which included consultation with and/or review of a written report from a health care consultant. For complete details please refer to our letter dated 08/08/2017.

**Summary of First Level Appeal**

On 02/01/2018 your client filed an appeal in response to our determination to deny benefits.

Your client's treating physician, Dr. Okor, provided restrictions and/or limitations as of her office visit on 03/14/2017 that would not preclude her ability to engage in any employment or occupation as defined by the policies. He indicated that in an eight-hour day she would have the ability to sit up to one hour; stand for less than one hour per eight-hour day; walk for less than one hour per eight-hour day; no lifting/carrying more than 15-20 pounds; no using of hands for repetitive actions; no using of feet for repetitive movements; no bending at the waist; limited squatting and crawling; no climbing; no reaching above shoulder level; no strenuous activity; no strenuous house work; no yard work and no work. Therefore, we find that the records do not support restrictions and limitations that would preclude your client from working in any occupation. We do understand that her impairments would preclude her ability to perform her own occupation on a full-time basis; however, they do not preclude her ability to engage in any employment or occupation.

Our review of the medical documentation, which included consultation with and/or review of a written report from an independent physician reviewer who is Board Certified in Physical Medicine and Rehabilitation and Pain Medicine, did not support that your client was Totally Disabled, as defined above, as of 12/27/2016 forward and ongoing. For complete details, please refer to our letter dated 04/04/2018.

**Summary of Second Level of Appeal**

On 10/01/2018, you and your client filed a second and final appeal in response to our determination to uphold our previous decision to deny benefits. Additional information was submitted from various sources including but not limited to Dr. Kemp, Jo Shuford-Guice CRNP, Dr. Javed, Dr. Staner and Dr. Okor as well as the results of multiple diagnostic tests and a copy of your client's Social Security file.

The medical records document lumbar spondylosis with radicular pain. Your client underwent lumbar spinal surgery on 12/27/2016. She was considered through a recovery period to 06/27/2017 based on a prior peer review. Supportive evidence found in the medical records

include: normal examination findings, good progress after surgery, and pain control per Pain Management. There is no documentation of adverse side effects of pain medication that would preclude your client from participating in her own financial or medical decision making, driving, personal activities or work activities. As of 02/16/2018, Peer Reviewer Behza Emad, MD, upon peer to peer discussion, proposes restrictions and limitations (R&L's), which are agreed upon by your client's treating provider, from 06/27/2017 forward for 5 months beyond the date of the review. On 02/18/2018, Alan Babb, MD, conducted an IME for Social Security Disability and concluded: "At this time I cannot document any specific disabling conditions." While the IME physician opined he found no impairment and no restrictions are supported, it is unclear what medical information was provided for his review. Therefore, the R&L's provided by Dr. Emad during the 02/16/2018 peer review are reasonable, based on the information that was included in this review. R&L's supported include:

From 12/23/2016 through 06/27/2017, due to scheduled and subsequent lumbar spine surgery and the recommended recovery period, it would have been medically reasonable that your client was functionally impaired and unable to perform in any duty at this time.

From 06/28/2017 forward, due to your client's ongoing symptoms and clinical findings, the following restrictions/limitations are supported:

- The claimant is restricted to sitting up to 30 minutes at a time and up to a total of six hours in an eight-hour day.
- The claimant is restricted to standing and walking combined up to one hour at a time and up to a total of two hours in an eight-hour day.
- The claimant is restricted to carrying, lifting, pushing and pulling no greater than 10 pounds of weight occasionally, and 5 pounds frequently.
- There are no restrictions in reaching overhead, above the shoulders, and at waist/desk level.
- The claimant is restricted to occasional reaching below the waist level.
- There are no restrictions for handling, fingering, grasping, pinching, gripping and use of hand controls.
- The claimant is restricted to occasional twisting, crawling, crouching, bending/stooping, kneeling, squatting, stair climbing, and use of foot control.
- The claimant is restricted from working at unprotected heights, driving commercial vehicle, climbing ladders, and operating heavy equipment or safety sensitive machinery.

The duration of the outlined restrictions/limitations is five months from the date of this report. After which, re-evaluation of the claimant's condition is advised to determine the continued necessity of the supported restrictions/limitations. The claimant is able to perform full-time (8 hours/day, 5 days/week) within the indicated restrictions/limitations.

On 01/07/2019, we sent a copy of the medical review to you to give you the opportunity to provide the assessment to your client's treating physician(s) for further review and comment. We also included a copy of the prior peer review report. In response, you submitted additional medical records from Dr. Kemp, various diagnostic test results and a letter from your client's medical carrier regarding two of her medication. This information was forwarded to the health care consultant for review.

It was the opinion of the reviewer that the medical records provided for addendum review do not change the prior determination from the date of prior peer review in February 2018 forward. The medical records, the treating provider's prior peer conversation and the physical examination findings continue to support the R&L's noted previously by Dr. Emad in his February 2018 peer review.

Prior to the appeal determination, additional records were submitted from Dr. Okor along with lumbar spine x-ray results both dated 02/25/2019. This information was also reviewed by the health care consultant.

An x-ray of the lumbar spine dated 02/25/2019 finds a fracture of the right posterior stabilization rod; no other hardware complication is found. Also Grade 2 anterolisthesis of L5-S1; superior endplate compression fracture of L1 is similar; disc spaces are stable.

An office visit with Dr. Okor (Neurosurgery) on 02/25/2019, at which time Dr. Okor advised your client of fractured hardware. She continued to complain of pain. Exam was normal for motor, sensory, reflexes and coordination. She was ambulating with a cane. Surgery was offered; however, it is unknown if it would benefit her significantly. Your client declined.

In summary, the medical records from Dr. Kemp (Pain Management) spanning 02/07/2018 - 02/20/2019 revealed your client continued with pain treated with oral medications and spinal injections, ambulating with a cane, but otherwise normal exams.

Medical records from Dr. Staner (Neurosurgery) from 11/01/2018 - 02/08/2019 revealed normal exam findings but significant ongoing pain and an option for a spinal cord stimulator was discussed. She was referred back to Dr. Okor.

The medical records submitted document a new finding of fractured hardware in February 2019, not otherwise contributing to your client's complaints, and risk versus benefit of replacement is not significant. Your client chose conservative care. Examination findings continued to be normal except for antalgic gait with a cane. The additional medical records did not provide compelling new evidence that would change the Peer Review determination at that time. The medical records continue to support the prior determination from 12/27/2016 for Extension of Death benefits.

**Second Level Appeal Decision**

We understand that your client has been diagnosed with lumbosacral spondylosis, spondylolisthesis and post-lumbar fusion. However, our review of the medical documentation, which included consultation with and/or review of a written report from a health care consultant, does not support that Mrs. O'Mary was Totally Disabled as defined above as of 12/27/2016 forward and ongoing.

The available clinical documentation does not contain evidence of physical or functional impairment that would prevent your client from working in any capacity. A review of the medical records did not identify restrictions and limitations that would preclude your client from performing any occupational activity. Therefore, we are unable to consider benefits for her Extension of Death benefits claims.

We evaluated these claims by applying the provisions of the policies to the facts and opinions contained in the claim files. Other than what is set out in the policies, we did not rely upon any guidelines, internal rules, protocols, standards or other similar criteria in reaching these claim determinations.

You and your client have exhausted all rights of appeal, and your client's administrative files are now closed.

If your client's plans are subject to ERISA, your client may have other voluntary alternative dispute resolution options, such as mediation. One way to find out what may be available is to contact your client's local U.S. Department of Labor Office and your client's State insurance regulatory agency. In addition, your client has the right to pursue litigation and your client may request copies of records and other information relevant to the claim free of charge.

The employer's plans have a contractual limitations period of three years, which means that a lawsuit must be brought within three years after the date written proof of claim or proof of continued disability was required. The date on which the contractual limitations period expires for this claim is 12/27/2021.

Please contact me directly at the number listed below with any questions you may have or email us at LFGAppeals@lfg.com.

Sincerely,

Kelly Tedford
800-423-2765 *2593
Specialist, Claims
Appeals Department – Claims Solutions Shared Services
The Lincoln National Life Insurance Company

Chinese (Simplified)

注意：如果您说普通话，可以选择免费语言支持服务。 请拨打 1-800-423-2765.

Chinese (Traditional)

注意：若您講國語，可使用我們的免費語言支援服務。 請致電 1-800-423-2765.

Tagalog

Pansinin: Kung nagsasalita ka ng Tagalog, mayroon kang magagamit na mga libreng serbisyo ng tulong sa wika. Tumawag sa 1-800-423-2765.

Spanish

Atención: si habla español, tenemos disponibles servicios de apoyo con el idioma sin costo para usted. Llame al 1-800-423-2765.

Navajo

DÍÍ BAA AKÓ NÍNÍZIN: Díí bee yáníłti'go Diné bizaad, saad bee áká'ánida'áwo'dę́ę́' t'áá jiik'eh, ná hóló̜. Kojį' hódíílnih áǫįóóǫéąą́ǫąíę́ę.