FILED
2021 Apr-19 PM 12:07
U.S. DISTRICT COURT
N.D. OF ALABAMA

# EXHIBIT

# "H"

Lincoln Financial Group

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

**The Lincoln National Life Insurance Company**
Service Office:
PO Box 2609
Omaha, NE 68103-2609
Toll free (800) 423-2765
Toll free Fax (877) 843-3950
www.Lincoln4benefits.com

February 21, 2020

STANSBERRY LAW LLC
ATTN AMANDA STANSBERRY
3535 Grandview Pkwy STE 310
BIRMINGHAM, AL 35243

Re: Policyholder: ARONOV REALTY MANAGEMENT INC
Policy Number: 00001012802700000
Claim Number: 1170026162
Claimant: Anna O'Mary

Dear Ms. Stansberry:

We have completed our review of your client's Long Term Disability appeal. Based on the information provided, we have determined that we are unable to approve benefits beyond April 27, 2018. In our appeal review process, all information previously submitted as well as any new documentation was used to make a determination.

To qualify for benefits under the policy issued to your client's employer, an individual must satisfy all of the provisions of the policy. This includes, but is not limited to, the following:

> *TOTAL DISABILITY or TOTALLY DISABLED will be defined as follows:*
> *1. During the Elimination Period and Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the Main Duties of his or her Own Occupation.*
> *2. After the Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the Main Duties of any occupation which his or her training, education or experience will reasonably allow.*
> *The loss of a professional license, an occupational license or certification, or a driver's license for any reason does not, by itself, constitute Total Disability.*
>
> *OWN OCCUPATION or REGULAR OCCUPATION means the occupation, trade or profession:*
> *1. in which the Insured Employee was employed with the Employer prior to Disability; and*
> *2. which was his or her main source of earned income prior to Disability.*

©2020 Lincoln National Corporation www.lincoln4benefits.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

> *It means a collective description of related jobs, as defined by the U.S. Department of Labor Dictionary of Occupational Titles. It includes any work in the same occupation for pay or profit, regardless of:*
> *1. whether such work is with the Employer, with some other firm, or on a self-employed basis;*
> *or*
> *2. whether a suitable opening is currently available with the Employer or in the local labor market.*
>
> *MAIN DUTIES or MATERIAL AND SUBSTANTIAL DUTIES means those job tasks that:*
> *1. are normally required to perform the Insured Employee's Own Occupation; and*
> *2. could not reasonably be modified or omitted.*
> *To determine whether a job task could reasonably be modified or omitted, the Company will apply the Americans with Disabilities Act's standards concerning reasonable accommodation. It will apply the Act's standards, whether or not:*
> *1. the Employer is subject to the Act; or*
> *2. the Insured Employee has requested such a job accommodation.*
> *An Employer's failure to modify or omit other job tasks does not render the Insured Employee unable to perform the Main Duties of the job.*
> *Main Duties include those job tasks:*
> *1. as described in the U.S. Department of Labor Dictionary of Occupational Titles; and*
> *2. as performed in the general labor market and national economy.*
> *Main Duties are not limited to those specific job tasks as performed for a certain firm or at a certain work site.*

Based on information obtained from your client's employer, occupational information contained within the *Dictionary of Occupational Titles* (DOT), and evaluation from vocational professionals, we have determined that your client's occupation as a is best defined as a ADMINISTRATIVE SECRETARY (any industry) alternate in the national workforce. The material and substantial duties of an ADMINISTRATIVE SECRETARY (any industry) alternate include but are not limited to the following:

> *Keeps official corporation records and executes administrative policies determined by or in conjunction with other officials: Prepares memorandums outlining and explaining administrative procedures and policies to supervisory workers. Plans conferences. Directs preparation of records, such as notices, minutes, and resolutions for stockholders' and directors' meetings. Directs recording of company stock issues and transfers. Acts as custodian of corporate documents and records. Directs preparation and filing of corporate legal documents with government agencies to conform with statutes. In small organizations, such as trade, civic, or welfare associations, often performs publicity work. Depending on organization, works in line or staff capacity.*

Regarding physical capacity, an ADMINISTRATIVE SECRETARY (any industry) alternate in the national workforce is a Sedentary physical capacity occupation. The definition of

Sedentary work is Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are only required occasionally (1-33%) and if all other sedentary criteria are met. Sedentary work may require exertion up to 10 lbs. occasionally and a negligible degree of exertion on a frequent (34-66%) or constant (67-100%) basis.

In order to be considered Totally Disabled, the medical documentation must support that your client is unable to perform each of the main duties of your client's own occupation. As such, in considering whether your client qualifies for Long Term benefits beyond April 27, 2018, we evaluated whether your client would be restricted or limited from performing the main duties of your client's occupation as listed above.

Your client's entire file was reviewed upon appeal. Disability must be supported from April 27, 2018 forward, which was the focus of our determination.

**Summary of Initial Claim Filing**

Your client's initial claim forms state that your client was unable to continue working in your client's own occupation beyond December 23, 2016 due to a diagnosis of spondylosis without myelopathy or radiculopathy and had a lumbar laminectomy fusion on December 27, 2016.

Benefits were approved to April 27, 2018. Benefits were not approved beyond April 27, 2018 after we determined your client is no longer Totally Disabled from performing the main duties of her occupation. Our evaluation included review of the medical documentation, including consultation with Dr. Emad Behzad, independent physician Board Certified in Pain Medicine and Physical medicine & Rehabilitation. For complete details please refer to our letter dated May 15, 2018.

**Summary of First Level of Appeal**

On October 1, 2018, your client filed an appeal in response to our determination to terminate benefits. Additional information was submitted with your client's appeal.

Our review of the medical documentation which included consultation with a health care consultant, did not support that your client was unable to perform the main duties of her own occupation beyond date last paid. For complete details please refer to our letter dated April 25, 2019.

**Summary of Second Level of Appeal/Appeal Decision**

On October 22, 2019, your client filed their second and final appeal in response to our determination to uphold our previous decision to terminate benefits. Additional information was submitted with your client's appeal.

Our review of the medical documentation, which included consultation with a health care consultant, does not support that your client was unable to perform the main duties of your client's own occupation beyond your client's date last paid.

The health care consultant noted the following in part.

*.. All available medical records have been reviewed through date and time of this review including all documentation submitted for appeal to date. …*

*The medical records document ongoing care and treatment of chronic low back pain, posterior thigh pain radiating to the top of the feet post lumbar surgery without significant change in clinical exam findings. The EE has been treated by Dr. Kemp (Pain Management), Dr, Gadea (Rheumatology), Dr. Okor (Neurosurgery), and Dr. Staner (Neurosurgery) as noted above. The medical evidence fails to demonstrate significant pain or neurological deficits such as decreased strength, altered sensation, loss of range of motion, or significant impaired gait to support R/L's beyond 4/27/18. An EMG /nerve conduction study 6/12/18 showed no evidence of bilateral L3-S1 radiculopathy or diffuse sensorimotor peripheral neuropathy in the lower extremities. Multiple diagnostic imaging studies did not show significant canal stenosis or nerve compression. It appears she is receiving pain relief with injections. There are no documented side effects to any medications causing cognitive impairment. On all exams she is noted to alert and oriented with intact memory. The EE is never noted to be in distress. While the EE is noted to have a compression fracture, surgery is not recommended, and she declined surgical intervention for hardware fracture. While it is reasonable to continue conservative treatment with intermittent injections, this would not necessitate ongoing R/L's. The R/L's outlined above by peer reviewer Dr. Emad are supported.*

For details of the medical records that were reviewed and the determinations of your client's restrictions and limitations, please refer to the report that was sent to you on January 23, 2020. The report was sent to you to afford you the opportunity for you or your client's treating physician to respond or offer a rebuttal. Our records indicate a response was received. This information was reviewed and considered however the additional information did not offer any information pertinent to the timeframe under review, in your client case that was as of April 27, 2018. The additional information would not change the prior review.

As noted in the above review, all information was reviewed and considered during this appeal. The review concluded there is no functional impairment from your client performing her own occupation as of April 27, 2018. The medical evidence fails to demonstrate significant pain or neurological deficits that would support not working as of April 27, 2018. Your client's EMG/nerve conduction study on June 12, 2018 found no evidence of bilateral L3-S1 radiculopathy or diffuse sensorimotor peripheral neuropathy in the lower extremities. The medical records and other file documentation do not support the payment of additional benefits.

We are aware that your client is receiving other income benefits, such as Social Security Disability Income (SSDI). Our records indicate she was awarded in a letter dated May 17, 2019 with an entitlement date of September 2017. However, please understand our group policy and review process is independent from that of the Social Security Administration (SSA). In our appeal acknowledgement letter sent to you on October 29, 2019 we gave you the option of providing a copy of the Social Security file for our consideration. We did not receive any

additional information pertaining to the SSDI award. Although benefits have been approved for SSDI, this decision was based on the SSA's plan provisions. The claim decision made under the Lincoln Financial Group policy was based upon information we have obtained from you, your client, your client's treating medical professionals and the results of any internal and/or independent reviews of your client's claim.

We therefore find that your client is no longer Totally Disabled under the terms of our policy.

You and your client have exhausted all rights of appeal, and your client's administrative file is now closed.

We evaluated this claim by applying the provisions of the policy to the facts and opinions contained in the claim file. Other than what is set out in the policy, we did not rely upon any guidelines, internal rules, protocols, standards or other similar criteria in reaching this claim determination.

If your client's plan is subject to ERISA, your client may have other voluntary alternative dispute resolution options, such as mediation. One way to find out what may be available is to contact your client's local U.S. Department of Labor Office and your client's State insurance regulatory agency. In addition, your client has the right to pursue litigation and your client may request copies of records and other information relevant to the claim free of charge.

The employer's plan has a contractual limitations period of three years, which means that a lawsuit must be brought within three years after the date written proof of claim or proof of continued disability was required. The date on which the contractual limitations period expires for this claim is April 27, 2021.

Please contact me directly at number below with any questions you may have or email us at LFGAppeals@lfg.com.

Sincerely,

Joseph Jackson
800-423-2765 *7735
Specialist, Claims
The Lincoln National Life Insurance Company

Chinese (Simplified)

注意：如果您说普通话，可以选择免费语言支持服务。 请拨打 1-800-423-2765.

Chinese (Traditional)

注意：若您講國語，可使用我們的免費語言支援服務。 請致電 1-800-423-2765.

Tagalog

Pansinin: Kung nagsasalita ka ng Tagalog, mayroon kang magagamit na mga libreng serbisyo ng tulong sa wika. Tumawag sa 1-800-423-2765.

Spanish

Atención: si habla español, tenemos disponibles servicios de apoyo con el idioma sin costo para usted. Llame al 1-800-423-2765.

Navajo

DÍÍ BAA AKÓ NÍNÍZIN: Díí bee yáníłti'go Diné bizaad, saad bee áká'ánida'áwo'déé' t'áá jiik'eh, ná hóló. Kojį' hódíílnih áǫįóóǫéąą́ǫąíę́ę.